Filed 1/18/23  P. v. Perez CA2/7
Opinion following transfer from Supreme Court

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

### SECOND APPELLATE DISTRICT

### DIVISION SEVEN

| | |
|---|---|
| THE PEOPLE, | B301466 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. PA028774) |
| v. | |
| LUIS ALFREDO PEREZ, | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Michael Terrell, Judge.  Reversed and remanded with directions.

Jonathan E. Demson, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra and Rob Bonta, Attorneys General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Charles Lee and

Heidi Salerno, Deputy Attorneys General, for Plaintiff and Respondent.

_____

In 1999 Luis Alfredo Perez pleaded no contest to second degree murder and admitted the allegation he personally used a dangerous or deadly weapon in the commission of the offense (Pen. Code, § 12022, subd. (b)(1)).[1]  The trial court sentenced him to 16 years to life in state prison.  Twenty years after his conviction, Perez, representing himself, petitioned for resentencing pursuant to former section 1170.95 (now section 1172.6), seeking to vacate his murder conviction and be resentenced in accordance with recent statutory changes relating to accomplice liability for murder.  After appointing counsel and ordering briefing, the superior court determined Perez was not entitled to relief because he was the actual killer.  The court relied on the transcript of Perez's preliminary hearing, at which two witnesses testified they saw Perez repeatedly and forcefully strike his wife with a hammer in the back of her head.

In our original opinion we concluded the superior court did not err in finding Perez ineligible for relief without issuing an order to show cause and holding an evidentiary hearing because it properly relied on the preliminary hearing transcript in finding Perez, as the actual killer, was ineligible for relief.

On October 26, 2022 the Supreme Court granted Perez's petition for review and transferred the case to us with directions to vacate our decision and reconsider Perez's appeal in light of *People v. Lewis* (2021) 11 Cal.5th 952 (*Lewis*).  In supplemental

_____

[1]     All further statutory references are to the Penal Code.

2

briefing Perez contends we should reverse the superior court's order denying Perez's petition and remand for an evidentiary hearing because under *Lewis*, the preliminary hearing transcript is not part of the record of conviction, and the determination that Perez was the actual killer requires factfinding not appropriate at the prima facie stage. We agree and now reverse.

## FACTUAL AND PROCEDURAL BACKGROUND

A.  *The Evidence at the Preliminary Hearing*

At the January 12, 1998 preliminary hearing, Maria Elena Vega testified she was the manager of the apartment building where Perez lived with his two children and his wife, Aura Leticia Morales. On December 4, 1997 Vega was in a storeroom beneath Perez's apartment with her sister-in-law Juana Salgado Mendosa. At around 4:00 in the afternoon, Perez's daughter approached Vega and Mendosa. She screamed and said her father was killing her mother. Vega exited the storeroom and saw Perez standing over Morales on the stairs leading up to Perez's apartment. Morales was lying on the stairs. Perez struck Morales in the back of her head five or six times with a hammer he clasped in both hands. Morales was not moving. Vega called the police.

Mendosa testified she was with Vega in the storeroom when Perez's daughter entered. Perez's daughter was crying and said her "daddy" was hitting her "mommy." When Mendosa approached the stairwell, she saw Perez hit Morales in the back of her head two or three times with a hammer he held in both hands. An autopsy showed Morales sustained 20 to 30 blows causing blunt force trauma to her head, which caused her death.

At the conclusion of the hearing, the court denied Perez's motion to dismiss the complaint for insufficient evidence (§ 995). The court made a finding there was sufficient cause to believe Perez was guilty of murder, and it held him to answer for the crime.

B.    *The Information, Plea, and Sentencing*

A January 27, 1998 information charged Perez with a single count of second degree murder committed "with malice aforethought" (§ 187, subd. (a)).  The information specially alleged Perez personally used a dangerous or deadly weapon, a hammer, within the meaning of section 12022, subdivision (b)(1).

On December 9, 1999 Perez pleaded no contest to the single count and admitted the special allegation he personally used a hammer as a dangerous or deadly weapon in the commission of the crime.  Perez's attorney stipulated to a factual basis for the plea, but she did not reference the preliminary hearing testimony.  The trial court accepted Perez's plea, found Perez guilty of second degree murder, and found true the special allegation.  The court sentenced Perez to a life term with a 15-year minimum parole eligibility date, plus a consecutive one-year term under section 12022, subdivision (b).  Perez did not appeal.

C.    *Perez's Petition for Resentencing*

On March 22, 2019 Perez, representing himself, filed a form petition with a supporting declaration in the superior court stating he had met the requirements under former section 1170.95 for relief under Senate Bill No. 1437 (2017-2018 Reg. Sess.) (Senate Bill 1437), including that (1) the information allowed the prosecution to proceed under a theory of felony

4

murder or the natural and probable consequences doctrine; (2) he pleaded guilty or no contest to first or second degree murder in lieu of going to trial because he believed he could have been convicted of first or second degree murder at trial under the felony murder rule or the natural and probable consequences doctrine; and (3) he could not be convicted of first or second degree murder under changes to sections 188 and 189, effective January 1, 2019. Perez requested the court appoint him counsel and vacate his murder conviction. With respect to his statement he could not be convicted of first or second degree murder under the 2019 amendments, Perez did not check the box on the form petition stating he was not the actual killer or the box stating he was not a direct aider and abettor who acted with the intent to kill. He also did not check the box stating he was not a major participant in the felony or did not act with reckless indifference to human life.

On May 20, 2019 the superior court appointed counsel to represent Perez, requested briefing from the parties, and set the matter for a hearing. The People filed a response, arguing Perez did not qualify for resentencing because the record of conviction demonstrated he acted with malice aforethought as the actual killer. The People attached the preliminary hearing transcript, preplea report, and plea hearing transcript as exhibits to their response. Perez filed a reply, but he only presented legal arguments, without identifying any evidence he claimed would have supported a finding he was not the actual killer.

At the August 29, 2019 hearing, the parties submitted on their papers without argument. On September 6, 2019 the court denied Perez's petition, finding Perez was not entitled to relief as a matter of law. In its minute order, the superior court found,

5

"The court file reflects that defendant was the actual killer and defendant also admitted the personal use of a deadly weapon in the commission of the offense."

Perez timely appealed.

## DISCUSSION

A.     *Senate Bill 1437 and Section 1172.6 (Former Section 1170.95)*

Senate Bill 1437 eliminated the natural and probable consequences doctrine as a basis for finding a defendant guilty of murder and significantly limited the scope of the felony-murder rule. (*People v. Strong* (2022) 13 Cal.5th 698, 707-708; *Lewis, supra*, 11 Cal.5th at p. 957; *People v. Gentile* (2020) 10 Cal.5th 830, 842-843, 847-848.) Section 188, subdivision (a)(3), now prohibits imputing malice based solely on an individual's participation in a crime and requires proof of malice to convict a principal of murder except under the revised felony-murder rule as set forth in section 189, subdivision (e). That section requires the People to prove specific facts relating to the defendant's individual culpability: The defendant was the actual killer (§ 189, subd. (e)(1)); although not the actual killer, the defendant, with the intent to kill, assisted in the commission of the murder (§ 189, subd. (e)(2)); or the defendant was a major participant in an underlying felony listed in section 189, subdivision (a), and acted with reckless indifference to human life "as described in subdivision (d) of Penal Code Section 190.2," the felony-murder special-circumstance provision (§ 189, subd. (e)(3)). (See *Strong*, at p. 708.)

Senate Bill 1437 also provided a procedure (now codified in section 1172.6) for an individual convicted of felony murder or

6

murder under a natural and probable consequences theory to petition the sentencing court to vacate the conviction and be resentenced on any remaining counts if he or she could not have been convicted of murder under Senate Bill 1437's changes to sections 188 and 189.  (*Lewis, supra*, 11 Cal.5th at p. 959; *People v. Gentile, supra*, 10 Cal.5th at p. 847.)  The ameliorative changes to the law now apply to attempted murder and voluntary manslaughter.  (§ 1172.6, subd. (a).)

If the section 1172.6 petition contains all the required information, including a declaration by the petitioner that he or she is eligible for relief based on the requirements of subdivision (a), the court must appoint counsel to represent the petitioner upon his or her request pursuant to section 1172.6, subdivision (b)(3).  Further, upon the filing of a facially sufficient petition, the court must direct the prosecutor to file a response to the petition and permit the petitioner to file a reply, and the court must determine whether the petitioner has made a prima facie showing that he or she is entitled to relief.  (See § 1172.6, subd. (c).)  Where a petitioner makes the requisite prima facie showing he or she falls within the provisions of section 1172.6 and is entitled to relief, the court must issue an order to show cause and hold an evidentiary hearing to determine whether to vacate the murder conviction and resentence the petitioner on any remaining counts.  (§ 1172.6, subds. (c) & (d)(1).)

7

B.    *The Superior Court Erred in Denying Perez's Petition Without Issuing an Order To Show Cause*

Perez contends the superior court erred in denying his petition without issuing an order to show cause and holding an evidentiary hearing because the court's consideration of the preliminary hearing testimony in denying Perez's petition required the court to engage in impermissible factfinding in determining he was the actual killer and could still be convicted of murder under the 2019 amendments.

In light of the Supreme Court's holding in *Lewis, supra*, 11 Cal.5th at page 972, we agree with Perez. As discussed, where a defendant makes a prima facie showing he or she falls within the provisions of section 1172.6 and is entitled to relief, the court must issue an order to show cause and hold an evidentiary hearing. (§ 1172.6, subds. (c) & (d)(1).) Perez averred in his petition for resentencing that (1) he pleaded no contest to second degree murder in lieu of going to trial because he believed he could have been convicted at trial under the felony murder rule or the natural and probable consequences doctrine, and (2) he could not now be convicted of second degree murder under the 2019 amendments. Notably, although Perez did not check the box on the form petition stating he was not the actual killer, his statement under penalty of perjury that he could not now be convicted of murder because of changes in the law establishes a prima facie case of eligibility for relief under section 1172.6.

As the Supreme Court instructed in *Lewis*, in determining whether the petitioner has made a prima facie showing he or she is entitled to relief under former section 1170.95, subdivision (c), "[l]ike the analogous prima facie inquiry in habeas corpus proceedings, "'the court takes petitioner's factual allegations as

8

true and makes a preliminary assessment regarding whether the petitioner would be entitled to relief if his or her factual allegations were proved.  If so, the court must issue an order to show cause.'"  [Citations.]  '[A] court should not reject the petitioner's factual allegations on credibility grounds without first conducting an evidentiary hearing.'  [Citations.]  'However, if the record, including the court's own documents, "contain[s] facts refuting the allegations made in the petition," then "the court is justified in making a credibility determination adverse to the petitioner."'"  (*Lewis, supra*, 11 Cal.5th at p. 971.)  But "[i]n reviewing any part of the record of conviction at this preliminary juncture, a trial court should not engage in 'factfinding involving the weighing of evidence or the exercise of discretion.'"  (*Id.* at p. 972.)  Rather, at the prima facie review stage, the court's review is limited to "'readily ascertainable facts'" in the record, such as the jury instructions, the record of the crimes committed, and jury findings on the enhancements.  (*People v. Duchine* (2021) 60 Cal.App.5th 798, 815; see *People v. Harden* (2022) 81 Cal.App.5th 45, 50 [considering jury instructions and verdicts to determine whether the record of conviction conclusively established that defendant was actual killer]; *People v. Ervin* (2021) 72 Cal.App.5th 90, 106 [considering as part of record of conviction the jury instructions, closing arguments, and verdicts, which did not show defendant was ineligible for relief based on jury's true findings on felony-murder special-circumstance allegation].)

The People acknowledge there is a split of authority post-*Lewis* as to whether a preliminary hearing transcript may be considered as part of the record of conviction where a petitioner admits the transcript provides a factual basis for the plea.  (See

*People v. Flores* (2022) 76 Cal.App.5th 974, 991 [preliminary hearing transcript may not be relied on to establish ineligibility for relief even with stipulation that transcript provided factual basis for plea]; see also *People v. Rivera* (2021) 62 Cal.App.5th 217, 238 [stipulation to grand jury transcript as factual basis for plea does not allow use of testimony to establish ineligibility for relief]; but see *People v. Davenport* (2021) 71 Cal.App.5th 476, 481 [rejecting argument that preliminary hearing transcript may never be relied on as part of record of conviction, but transcript may only be considered if petitioner admits it provides factual basis for plea].)  We need not decide whether the preliminary hearing transcript may ever be considered at the prima facie review stage because neither Perez nor his attorney stipulated that the preliminary hearing transcript provided a factual basis for his plea.  And, following *Lewis*, consideration of testimony in the preliminary hearing transcript, absent an admission the testimony is true or a stipulation that the transcript provides a factual basis for the plea, involves judicial factfinding not appropriate at the prima facie review stage.  (See *Lewis, supra*, 11 Cal.5th at p. 972.)

The People suggest the superior court could have considered the preliminary hearing transcript at the prima facie review stage (in addition to the information) to show the People did not intend to proceed on a theory of liability other than that Perez was the actual killer.  However, neither the fact Perez was charged with murder with malice aforethought nor the People's presentation of evidence at the preliminary hearing precluded the People from proceeding on a theory of imputed malice.  (See *People v. Flores, supra*, 76 Cal.App.5th at p. 987 [generic murder charge does not exclude any particular theory of murder]; *People*

10

*v. Eynon* (2021) 68 Cal.App.5th 967, 977-978 [same]; *People v. Rivera*, *supra*, 62 Cal.App.5th at p. 233 [same].)

Finally, contrary to the People's contention, Perez's admission he personally used a hammer in the commission of the murder does not necessarily establish that he was the actual killer.  We recognize that two witnesses testified at the preliminary hearing that Perez killed his wife by repeatedly and forcefully striking her in the back of her head with a hammer.  But, as discussed, the superior court cannot consider the preliminary hearing testimony in deciding at the prima facie review stage whether Perez was ineligible for resentencing as a matter of law.  And there are possible—albeit unlikely—scenarios under which Perez's personal use of a hammer would not mean he was the actual killer.  As the Supreme Court explained in *People v. Jones* (2003) 30 Cal.4th 1084, 1119-1120, in rejecting the argument the defendant's admission of personal use of a firearm necessarily meant he was the actual killer of a restaurant manager where he and a confederate robbed the restaurant, "The finding of personal use, however, would not in itself prove defendant was the actual killer.  If two robbers display guns to intimidate robbery victims and one shoots and kills a victim, both robbers could be found to have personally used a gun in the robbery and the felony murder, even though only one is the actual killer." (*Id*. at p. 1120.)

Even assuming the People present evidence at the evidentiary hearing consistent with the preliminary hearing testimony, Perez could theoretically present evidence, like the hypothetical example in *Jones*, that he and a confederate entered Morales's apartment to rob her, threatening her with hammers, but in the course of the robbery the confederate used his hammer

11

to strike the fatal blow.  Under *Lewis*, the superior court cannot deny a petition at the prima facie review stage where there is even an abstract possibility, implausible as it may be, that the defendant can present evidence that would show he is eligible for resentencing.  The trial court's finding to the contrary based on the preliminary hearing transcript was based on factfinding not appropriate at the prima facie review stage.

## DISPOSITION

The order denying Perez's petition for resentencing is reversed.  On remand the superior court is to issue an order to show cause and to conduct further proceedings in accordance with section 1172.6, subdivision (d).


FEUER, J.

We concur:


PERLUSS, P. J.


SEGAL, J.

12